## *Alexander Kerr *against* Jonathan Mere- [*283 dith.

Under stat. 8 and 9 Wil. 3, c. 11, in debt on the penalty of a bond, plaintiff may assign as many breaches as he pleases. If his pleading is vicious, defendant must take advantage of it by demurrer.

DEBT 250,000 dollars, on bond, dated 1st April 1797, with special condition.

The defendant demurred to the declaration, which was overruled on argument in March term last. [Where the obligation, condition, article of agreement referred to therein, assignments and pleadings are fully stated.] He also pleaded by leave of the court, convenants performed.

The plaintiff joined in demurrer ; and further replied, that the obligors have not performed the covenants in the condition of the said bond mentioned, in this : that they have not indemnified the said Kerr, from all costs, suits, losses and damages, on account of the debts and engagements due by the late co-partnership of Kerr and Hawthorne, inasmuch as he, the said Kerr, was arrested by Samuel Gregg, Samuel Lyle and Peter Ewart, for a company debt since the execution of the said bond, and thereby put to great costs and charges to the amount of $100, and was imprisoned for six hours ; and this he is ready to verify. In this also, that the obligors have not paid the company debts of Kerr and Hawthorne, which were due on the 1st April 1797, to wit, to John Philips, $12,087 57 cents ; to Charles Wood and co. $815 42 cents ; to Philip Oates and co. $7311 2 cents ; to Samuel Philips and co. $3250 74 cents ; to Moore, Stanger and co. $1789 39 cents ; to William Dubbs, 1100l. 10s. sterling ; to Samuel Gregg and co. $2284 95 cents ; to Cookson and Waddington,

[Kerr *v*. Meredith.]

$1519 18 cents; to Bowerbank, Monkhouse and co. 476l. 2s. 5d. sterling; to Francis Nalder, 93l. 7s. 8d. sterling; to Drury and Gilbert, $726 61 cents; to John Davenport, $1195 77 cents; to Samuel and William Hibbert, $2287 75 cents; to Scott, Crosky and Stokes, 414l. 10s. 10d. sterling; to Thomas and George Maltby, 2419l. 13s. 8d. sterling; to Smith and Thompson, 385l. 19s. 9d. sterling; to Wilts and Rowley, 382l. 8s. 4d. sterling; and also to the same firm, 390l. 18s. 10d. sterling; and to Redesdale and co. $1924 83 cents; all which debts remain unpaid, and of which the said obligors had notice; and this he is ready to verify. And in this also, that the obligors have not paid to the said Alexander Kerr, the sum of $9000, for his share of the partnership; and this he is also ready to verify.

The defendants rejoined, that they had at all times indemnified the plaintiff from all costs, suits, losses and damages, on account of the debts and engagements due by the late co-partnership of Kerr and Hawthorne; without this, that the said Kerr, was arrested by the said Samuel Gregg, Samuel Lyle and Peter Ewart, *for the partnership debt; and of this they put themselves on the country. And further, that all the company debts of Kerr and Hawthorne, due on the 1st April 1797, to wit, to Charles Wood and co. &c. (enumerating them particularly as mentioned in the replication,) have been paid by the said Thomas Hawthorne, since the said 1st. April 1797, (except the debts alledged to be due to John Philips and co. and Wilts and Rowley, to whom in fact no debts were due,) and of this they put themselves on the country. And further, that the said $9000, have been paid to the said Alexander Kerr, for his share of the partnership, before the commencement of this suit; and of this also, they put themselves on the country. *Querens, similiter*, &c.

A plea in abatement, that a former suit was depending for the same cause of action, having been withdrawn, under the recommendation of the court, the following agreement was entered on the docket on March 12, 1804. " It is ordered, that this action " shall stand for the use of Anne Lang and William Hawthorne, " and for the use of James Lyle and James Taylor, the assignees " in trust for the creditors of Kerr and Hawthorne generally, " and for the use of all and every person and persons entitled to " any benefit or indemnity, under the bond on which this suit " is brought, and in the order in which such person or persons " are so entitled. But under this order, each claimant shall es- " tablish his quantum of debt or damages, by legal process and " adjudication. Provided, that this be taken as no recognition " by the defendants, that the plaintiff in this suit ought to re- " cover for any purpose whatsoever. All other actions brought " on the same bond, are agreed to he discontinued."

The cause came on to trial at *Nisi Prius*, on the 26th August 1805, before YEATES, SMITH and BRACKENRIDGE, justices, when after a full hearing of five days, the jury gave the following ver-

[Kerr v. Meredith.]

dict, which was formally drawn up at the bar by the plaintiff's counsel, the defendant's counsel refusing any concurrence therein.

The jury find for the plaintiff by virtue of the bond aforesaid, $250,000 being the penalty thereof, with 6 cents damages, and 6 cents costs. And the jury say, that the said sum in part arises, because the defendant hath not indemnified the plaintiff from all costs, suits, losses and damages, on account of the debts and engagements due by the late co-partnership of Kerr and Hawthorne, in this, that the plaintiff hath suffered loss by a suit and arrest, in the names of Gregg, Lyle and Ewart, to the amount of 10 cents, which the jury assess to be due to him, by reason of such loss and damage; and also in this, that there were before the 1st April 1797, company debts due from Kerr and Hawthorne, and are now due, amounting with interest as follows: [Here sundry debts are specified, part of those mentioned in the replication: *among which are the debts due to Drury and Gilbert, Scott, Croskey and Stokes, Samuel and William Hibbert, and John Davenport, not found separately, but all included in one aggregate sum of $1844 and 25 cents.] [*285

As to the debt of Gregg, Lyle and Ewart, the jury find for the defendant: as to the debts of Francis Nalder, and of Moore, Stanger and Co., they find for the defendant, subject to the opinion of the court on the matters of law: and as to the breach assigned in non-payment of the $9000, to Kerr,, they also find for the defendant: and they further find, that the rest of the said sum of $250,000 the penalty of the said bond, remains for the use of Anne Lang, and William Hawthorne; and for the use of James Lyle and James Taylor, the assignees in trust for the creditors of Kerr and Hawthorne generally, and for the use of all and every person and persons entitled to any further benefit or indemnity under the said bond, on which this suit is brought, and in the order in which such persons are so entitled; each of such persons first establishing the *quantum* of debts or damages, by legal process and adjudication.

Upon the return of the *postea* the defendant's counsel obtained a rule to shew cause, why a new trial should not be granted; and also filed the following reasons in arrest of judgment, on the 5th September 1805.

1st. For that it appears by the plaintiff's replication, that the debt claimed by Drury and Gilbert from the defendant, the debt claimed from the defendant by Scott, Crosky and Stokes, that claimed from him by Samuel and William Hibbert, and the debt claimed from him by John Davenport, were four separate and distinct debts or demands, which by the pleadings were distinctly and separately put in issue; and upon which, the jury ought distinctly and separately to have found their verdict: whereas by the verdict one entire sum is found due to the said four claimants or supposed creditors.

2d. For that various breaches of the articles of agreement and

condition of the bond referred to in the pleadings are assigned ; among other things in the non-payment of divers sums of money to different supposed creditors of Hawthorne and Kerr, amounting in number to fourteen different individuals or commercial houses at the least, by means whereof the defendant hath been driven to the necessity of either admitting the facts as stated in the pleadings, or controverting upon the same trial before the same jury, fourteen distinct and separate claims or debts, of as many different individuals or commercial houses : that this mode of pleading is contrary to the spirit and principles of the common law, and that no judgment can be rendered thereon.

3d. That upon these pleadings, no judgment ought to be rendered, *286]  whereby the defendant shall be obliged to pay to any of the supposed creditors in the replication mentioned, the particular sum or sums alledged to be due to them.

4th. That by the agreement of 12th March 1804, filed in this cause, no judgment can lawfully be entered thereon, whereby the defendant shall be obliged to pay to any of the supposed creditors in the replication mentioned, the particular sum or sums found to be due to them.

5th. That the obligation and agreement stated in the pleadings, form a ground of action or relief only to Alexander Kerr, and not to the assignees of the said bond, either for their own benefit, or that of the creditors of Hawthorne and Kerr.

6th. For that the damages found to have been sustained by the different persons in the replication mentioned, to whom the jury have awarded any sum or sums of money in this cause, exceed in the whole the sum of forty thousand dollars, whereas the damages laid in the declaration are a far less sum ; to wit, the sum of ten thousand dollars only.

The argument on the rule to shew cause, came on at the last December term ; and the court discharged the rule. They were not dissatisfied with the general result of the verdict. How far it might operate, or what might be its legal extent, would be the subject of future discussion. The clear object of the bond and articles was a full indemnification to Kerr against the partnership debts ; and while in any shape, he could be made responsible for any of them to the creditors, he was entitled to recur to the defendant under all the circumstances of the case.

The reasons in arrest of judgment were argued this term ; but the sixth exception was abandoned as indefensible.

The arguments for the defendant were substantially as follow.

Exception 1st. The jury are bound to find the whole issue ; but they have consolidated four distinct debts submitted to them into one mass, making a sum total of $1844 and 25 cents. The verdict must not only be substantially good in itself, but it must be good with reference to all the pleadings. Here the verdict does not pursue the replication and rejoinder. There was no con-

[Kerr v. Meredith.]

solidated debt due to four different firms put in issue; nor was it ever pretended that such joint debt existed. Under the statute of 8 and 9 Wil. 3, on *nil debet*, the jury must assess the damages upon each breach. 2 Wils. 377.

The court have it not in their power to mould this verdict into form, in the present particular. Neither their own notes, nor those of the clerk, will serve as a guide on the occasion. The jury must find the substantial facts, on which the court *only can act. The defendant did not interfere in the formation of the verdict; the notes returned by the jury [*287 when they came to the bar, must be taken with all their crossings and obliterations. From these memoranda, nothing can be collected.

Exception 2d. At common law, in debt upon a bond with condition to perform covenants, the plaintiff could assign only one breach; but in covenant, he might assign as many breaches as he pleased. Bull. 163. Cro. Cas. 176. This is altered by stat. 8 and 9 W. 3. c. 11. s. 8, and the plaintiff may assign as many breaches as he shall think fit; and the jury shall assess damages for such of the said breaches, as the plaintiff shall prove to have been broken. This statute is compulsory on the plaintiff. 5 Term Rep. 541, 636. 1 Saund. 58. Williams's Note. In 2 Burr. 773, Mr. Caldecott states, that the statute does not extend to actions of debt brought for the penalty of a bond; it only relates to actions for damages for non-performance of covenants; and in such cases, enables the plaintiff to assign as many breaches as he shall think fit. Lord Mansfield agrees, that his principles are right. Ib. 774. Here the declaration does not pursue the statute; nor is it found by the jury, that the plaintiff has sustained damage by non-payment of the company debts; and therefore the verdict is not within the words or meaning of the statute. The assessing of damages is a legal term, and conveys a determinate idea. Juries are peculiarly the judges in cases of damages; they might consider that the contract was entered into by mistake or misapprehension; they have found damages to the plaintiff for the arrest, but not as to the non-payment of the company debts; and this is conceived to be an incurable defect.

Exception 3d. The statute of Wil. 3, was made for the benefit of the plaintiff on a breach of covenants, not of persons who are strangers to the record. The verdict is good only so far as it finds the 10 cents damages to the plaintiff for the arrest, at the suit of Gregg, Lyle and Ewart. Nothing can prevent the creditors from recovering their debts a second time, if this verdict should receive the sanction of the court.

Exception 4th. It cannot be believed, that the agreement of 12th March 1804, as entered on record, was intended to alter the rights of the parties, or precipitate the recovery by the creditors.

Each claimant is to establish the quantum of debt or damages by legal process and adjudication. The construction set up

[Kerr v. Meredith.]

against us, is, that the creditors may establish their debts *en masse;* and varies the agreement, which necessarily refers to a separate process by each creditor, whose claim may be contested.

Exception 5th. The object of the bond and articles was the relief of Kerr himself, not of the creditors of the firm. He *288] *might have delivered up to the obligors their bond without the concurrence of the partnership creditors; he might have cancelled it himself. The obligation was intended to indemnify Kerr; but merely being liable to a suit, is no damnification. The surety of an obligor is no creditor, until he has paid the debt. This is fully proved by Smith *et al. v.* Gale, 7 T. R. 364, and by Hammond *et al. v.* Toulmin *et al.* Ibid. 612. In this state, an assignee is subject to all the equity of his assignor. If the creditors had released their debts, the defendant would not have been liable.

The plaintiff's counsel arranged their arguments under three general heads. They considered, 1st whether if the pleadings were correct and the verdict good, the plaintiff was not intitled to recover?

2dly. Are the allegations of the plaintiff sufficiently penned in point of legal form?

3dly. Is the verdict substantially good, so as to authorize a judgment to be entered thereon?

I. The articles of agreement contemplated three objects. 1st. That the debts of the partnership should be paid, at two stipulated periods. 2d. That Kerr should be fully indemnified therefrom. And 3d. That he should receive $9000, for his concern.

The bond was given accordingly; the payment of the company debts was a substantive, independent covenant. Kerr has only received his $9000. It is clear therefore, that the bond was designed to operate further than a complete indemnification. If on the 1st October 1798, the partnership debts were not paid, the plaintiff had a complete ground of action. A counter bond is forfeited by non-payment of the money at the day. 2 Bulst. 234. The principal case is much stronger. For if but a simple debt remained unpaid.after the day fixed, the plaintiff had immediately a good cause of suit. He was under no necessity of paying the money in the first instance. Every word in the instrument must receive its full operation. At the same time it is admitted, that the assignees have no superior equity to the obligee, and that if the partnership creditors had released their debts, the substantial spirit of the contract would have been so far complied with.

The agreement of 12th March 1804, took place after the argument had begun on the plea in abatement. The first suit was brought for the use of Lang and Hawthorne, and a second suit for the use of Taylor and Lyle, under the agreement, both ac-

[Kerr v. Meredith.]

tions were consolidated for the use of all the creditors ; but each claimant was to establish his demand by legal process and adjudication.    *Separate suits are not contemplated hereby, [*289 but that the obligors should have an opportunity of contesting the claim of each creditor, under the bond.    The agreement was made for the benefit of the creditors generally, with every degree of caution as to the interests of the obligors ; and nothing can defeat it, unless it impugns legal principles, which we contend to be in perfect unison therewith.

II. In almost all the instances in the books, declarations on bonds with special conditions take no notice of the conditions. They are usually declared upon as on bonds, conditioned to pay a sum of money at a certain day.    If the defendant pleads generally a performance of the condition, the plaintiff in his replication must set out a breach or breaches, and tender issues thereon.    In the assignment of the breaches, the stat. of 8 and 9 W. 3, c. 11, need not be mentioned ; and the more specially the breaches are stated, the fuller opportunity is given to the defendant of repelling the demand against him.

The assertion in 2 Burr. 772, of counsel, that in debt upon the penalty of a bond, the plaintiff ought to confine himself to one particular breach, is unfounded.    It contradicts all the cases on the subject, and opposes the plain words of the statute.    Ld. MANSFIELD states the express contrary in the same book, p. 824, and in the following page, that the judgment is to be for the whole penalty, and is to remain as a further security, though execution is to be stayed on payment of the sum due.

In 5 T. R. 538, 636, the declaration stated the breaches, but the jury found no damages.    The judgment was entered for the penalty, and the error appeared on record.    The defendant has rejoined to the plaintiff's replication, and thereby admits the propriety of the pleadings.    He should not have taken the chance of a verdict, and afterwards insist on irregularities.    He ought to have applied to the court by motion, or demurred to the replication.    A verdict will cure the informality of an issue, but not where it is substantially defective.    The multifarious matter disclosed in the replication, arose necessarily from the circumstances of the case.    In Cowp. 578, Ld. MANSFIELD states it to be a rule in pleading, that you cannot go to issue on a general averment of performance.    The reason is, that the question may be brought to some degree of certainty, and notice given of what was to be agitated at the trial.    A breach must be specifically assigned in debt on bond.    *Aliter* in covenant.    1 Lord Raym. 478.    1 Salk. 139.

If our mode of pleading has deviated from the simplicity of the common law, and is therefore vicious, its doubleness should have been excepted to by a special demurrer.    1 Rol. Rep. 112. *In this mode only are matters of form to be taken advantage of.    2 Wils. 11, 12.    What may be good cause [*290 of demurrer, will not prevail in arrest of judgment.    3 Bl. Com.

4 YEATES—18

[Kerr v. Meredith.]

394.  A municipal law declares, that proceedings shall not be reversed for mere form.    8 St. Laws, 97, sec. 17.

III.  The verdict substantially finds damages.   The grounds of the finding are stated ; that the penalty arises in part from the defendant's not indemnifying the plaintiff from all costs, suits, losses, and damages, on account of the partnership debts, in this, that he has suffered loss by the arrest ; and also in this, that the company debts have not been discharged.   The findings will be connected together, and moulded into form by the court if necessary.    This is not so strong as construing or to be and, and *vice versa*.    If the jury had mentioned that they meant to assess the damages of the plaintiff, it would have been sufficient. What they have stated is at least tantamount thereto.   The non-payment of the company debts was an inevitable loss to the plaintiff, who was responsible therefor.    Though the verdict do not punctually find the words of the issue, yet if the point in issue may be concluded out of it, the court shall work it into form, and make it serve.   Hob. 54.   2 Stra. 1036–7.

But it has been strongly urged, that four separate debts have been put in issue, and only one aggregate sum has been found. This arose from the jury's valuation of the lands on the Ridge road, which were conveyed by Hawthorne to John Allen, as agent for the four firms, no price being fixed.    The jury valued the property at 2800 dollars, and proportioned it amongst the four sets of the creditors, but did not perfect the calculation. The notes of the court and memoranda of the jury will serve to ascertain the precise sums due to these four houses.    1 Salk. 53.   A payment of the sum found due will fully exempt the defendant from these four debts ; though it be less than the real sum due, it will be the loss of the creditors, but the gain of the defendant.    The release of the trustees would be good, even after error brought.

If the jury had found all the fourteen debts in one joint sum, it would have been good, and would have been deducted from the penalty.    It would be the duty of the trustees to separate and proportion the sums found ; but a payment, according to the result of the verdict, would certainly free the obligors from all responsibility in future, as to the debts of those company creditors which were put in issue.

At the utmost, if all the debts except these four, have been properly found by the jury upon the breaches assigned, it will be no ground for arresting the judgment *in toto*, if the trustees will execute a release for these four debts. under the *291]   *bond to the defendant.    Everything in the verdict will be presumed to be right unless the contrary appears. 1 Wils. 205.

The mode of entering up judgments under the stat. of 8 and 9 W. 3, c. 11, has been considered by Mr. Serjeant Williams, in his note to Gainsford v. Griffith.    1 Saund. 58.    And Lord C. J. ALVANLEY, in delivering the opinion of the Court of Common

[Kerr v. Meredith.]

Pleas, in a late case, has declared that he saw no objection there-
to.   3 Bos. and Pul. 607, 612.

The court advised on the case for three days, and TILGHMAN,
C. J. delivered their opinion as follows :

This is an action of debt for the penalty of a bond given by
Thomas Hawthorne, John Maxwell Nesbitt, and the defendant
Jonathan Meredith, to Alexander Kerr, the plaintiff.   The ac-
tion was originally commenced against all the obligors, but Mr.
Nesbitt being dead, and Mr. Hawthorne having become a cer-
tified bankrupt, Mr. Meredith remains at present the sole de-
fendant.

In order to understand the case, it will be necessary to state
the circumstances under which the bond was given, and also the
pleadings in the action.

He then stated 1st. The articles of agreement between Kerr
and Hawthorne, dated 1st April 1797.

2dly. The bond and condition of like date.

3dly. The assignment of the bond to Anne Lang and William
Hawthorne, so far as was sufficient to discharge the debt from
Kerr and Hawthorne to Lang and Hawthorne, (on which judg-
ment had been obtained) dated 7th March 1800.

4thly. A second assignment thereof to Taylor and Lyle, in
trust for the creditors of Kerr and Hawthorne generally, of like
date.

5thly. The plea of covenants performed.

6thly. The replication under the statute of 8 and 9 Wil. 3,
c. 11, assigning three breaches.

7thly. The rejoinder, denying these three breaches, and ten-
dering as to each a several issue, which was joined by the
plaintiff.

And 8thly. The verdict.

The cause now comes before the court on a motion in arrest
of judgment ; and in support of this motion, six exceptions have
been taken to the proceedings.

I shall not examine these exceptions, in the manner they have
been brought forward, either with respect to their order, or their
number, because the 6th was very properly given up by the de-
fendant's counsel in the course of their argument ; and of those
that remain, several may be considered under one point of view.
*They are all reducible to three heads.   1st. The plead-   [*292
ings.   2d. The verdict.   3d. The manner of entering the
judgment.

I. As to the pleadings, the plaintiff in his replication, has as-
signed three breaches.   No objection has been made to the first,
or to the third assignment : but it was urged, that the second
was contrary to the spirit and principles of the common law ;
because it reduced the defendant to the hardship of taking issue
upon a great number of separate debts, said to be due to divers
persons from the house of Kerr and Hawthorne. • But how was

[Kerr v. Meredith.]

this to be avoided ?   It necessarily arose from the subject mat-
ter.   The defendant had undertaken, that all the debts of Kerr
and  Hawthorne  should  be  discharged  by a certain day.   The
plaintiff  claims  damages  for a breach of  this undertaking.   In
order to entitle himself to damages, he must prove to the jury that
the defendant had not performed his engagement.   Suppose he
had  replied, that the  defendant had  not paid all the debts of
Kerr  and  Hawthorne,  and that upon this issue they had  gone
before the  jury.   How could the jury have formed any estimate
of  the  damages,  unless they received  proof  of  the  particular
debts, that remained unpaid ?   And if this proof was necessary,
was it not for the advantage of  the defendant to  receive notice
in  the  replication of  those particular debts, which the plaintiff
averred to be outstanding ?

Besides, under the statute of William, the plaintiff may assign
as many breaches as he pleases.   Now suppose he had assigned
the non-payment of  each  particular debt as a separate  breach ;
would not the defendant have been obliged to go into the trial of
all of them, at one time ?   And might not he have justly com-
plained, that the plaintiff by this mode of pleading, had wantonly
swelled the record, and of course the expences of the suit to an
enormous magnitude ?   But if  even this mode of pleading was
vicious, which I think it was not, it would have been cured by
the verdict.   If it was irregular, the defendant should not have
joined issue, but demurred.   I think therefore that this excep-
tion to the replication is unfounded.

II. Let us next consider the verdict.

It is alledged to be defective in two respects.   1st. That al-
though it finds a number of the debts of Kerr and  Hawthorne
to be unpaid, yet it assesses no damages to the plaintiff on that
account.

2dly.   That it finds a debt of $1844 and 25 cents to be due to
four persons jointly ; whereas no such debt was put in issue, but
a several debt to each of those persons.

1. It is undoubtedly true, that the  jury are bound to assess
damages, on each of the breaches assigned by the plaintiff ; and
*if they have not done so, the verdict is defective.   It is
*293]   the duty of the court to support the verdict of a jury, if
it may legally be done.   The court have no power to supply sub-
stantial omissions ; but if  the jury have expressed their mean-
ing in an informal manner, the court not only may, but are bound
to mould it into form.   In the  present instance, they have ex-
pressed themselves very awkwardly; but  I think, it sufficiently
appears from their words, that their  intention was to find dam-
ages, to the amount of  the specified debts.

They have in the first place, found for the plaintiff the penalty
of  the bond, $250,000, with 6 cents damages and 6 cents costs.
They then proceed  to  say, that the said sum in part arises, be-
cause the defendant has  not indemnified the plaintiff from all
suits, &c. on account of  debts of Kerr and Hawthorne, in this,

[Kerr *v.* Meredith.]

that the plaintiff hath suffered loss, &c. by a certain suit and arrest, &c. to the amount of 10 cents, which they assess for his damages, by reason of such loss, &c. ; and also in this, that there were before 1st April 1797, and still are divers debts due from Kerr and Hawthorne, to sundry persons, &c. (particularizing the names of the creditors and the sums due to each.)   Having thus said, that the plaintiff has suffered damages by the non-payment of those debts, the amount of every one of which is ascertained, they proceed to say, that the rest of the said sum of $250,000, remains for the use of Anne Lang and William Hawthorne, &c.

What is meant by the rest of the said sum ?   Is it meant, the remainder, after deducting 10 cents, found for damages, on account of the first breach ?   Certainly not ; because after finding those 10 cents, they have mentioned all those debts.   Can there be a doubt, but the word rest means the remainder, after deducting both the 10 cents, and the amount of the debts ?   If their meaning was, to deduct the amount of the debts, it is tantamount to finding damages ; because that amount could not be deducted upon any other principle.   I am therefore of opinion, that the jury have informally found the amount of those debts, as damages.

2. I will now advert to the other objection, that the verdict has found what was not put in issue.   This objection appears to me, to be well founded.

The jury have found a joint debt due to four persons ; whereas the pleadings put several debts to each of those persons, in issue.   The plaintiff's counsel have called on the court to rectify this error by their notes ; but they have no notes by which they can rectify it.   The written verdict delivered by the jury, affords no grounds, by which the several debts of those four persons can be ascertained.   But is there no remedy for this defective finding ?   *The plaintiff's counsel suggested, that if the defendant would pay the amount of what was found due to [*294 those four persons, they would procure their release of all debts, joint or several.   The defendant may do this, if he pleases, but he cannot be compelled to it.   It was also suggested by the plaintiff's counsel, that they might expunge this part of the finding from the verdict ; but even that is not sufficient.   For after such expunging, the verdict is defective in this, that the jury have answered nothing as to those four several debts put in issue.   I see no remedy, but by releasing not only the sum of $1844 25 cts. found by the jury as a joint debt, but also all that part of the breach assigned, which relates to the four several debts.   If that is done, I think the verdict would be good for the residue.   For the defendant could not be injured by the verdict's answering nothing as to a breach relinquished by the plaintiff.   But if that is not done, there must be a *venire facias de novo.*

III. If the verdict is thus cured, the next question is, how is judgment to be entered ?   Without doubt, for the penalty of the

[Kerr *v.* Meredith.]

bond. And unless there is some special cause to the contrary, the plaintiff may take out execution immediately for the whole amount of the damages, assessed by the jury. The defendant alledges, that he has shewn cause, why this should not be done; and he relies on a written agreement, signed by the counsel on both sides.

The agreement in substance is, that the present action is to stand for the use of all those persons, who are vested with an interest in the bond under the assignments of the plaintiff ; but under this restriction, that each claimant shall establish the *quantum* of debt or damages, by legal process and adjudication.

The expressions are very singular ; so much so, that one would almost be induced to think, that the counsel on each side had not explicitly communicated to each other, what was their object. However, we must take the writing as we find it, and endeavour to give it a reasonable construction. I must suppose, that the intention on the part of the defendant was, to secure to himself an opportunity of contesting the amount of each debt. It was equally convenient and far less expensive for him to have this done in the present action, than by each one entitled bringing a separate suit. The creditors were bound by this agreement ; because they were represented by the attorney who acted for the trustees. The defendant has contested these debts where he thought proper, in this trial ; and in several instances, the jury have found in his favour.

I am therefore of opinion, that there has been an adjudication, within the meaning of the agreement. If there had been no agreement, execution might have gone for the amount of the *whole damages at once. As it is, I think that creditors, or rather the trustees who represent them, may take out execution in such manner as to procure payment of the several debts found to be due by the verdict.

*295]

BRACKENRIDGE, J. I think the plaintiff is entitled to judgment for the penalty ; but that the four debts, which have been found jointly, should be expunged from the verdict, and submitted to the decision of a future jury. They will stand on the same ground, as the company debts, which are hereafter to be established by legal process and adjudication. Complete justice will be effectuated hereby to all parties.

YEATES, J. The law is clearly settled, that the jury must answer to the whole issue, which they have been charged with ; otherwise the verdict is bad. Co. Lit. 227, a. 2 Stra. 1089. Cro. Jac. 31, 113. 3 Lev. 55. By expunging these four debts, the verdict is made defective. If the assignees will release the defendant from them, it seems to me, the verdict may be sanctioned by the court ; but not otherwise. I fully concur in the opinion, which has been delivered by the chief justice.

SMITH, J. I also concur in opinion with him.

Messrs. Ingersoll, Rawle and Dallas, *pro quer.*

Messrs. E. Tilghman, Lewis and M. Levy, *pro def.*