Henry Schweickhardt, Respondent, *v.* City of St. Louis *et al.*, Appellants.

### July 3, 1876.

1. When A employs B to do certain work for him, but does not in any way control or superintend him, he is not liable for injury to third persons, caused by the negligence of B.

2. If A, B, and C are sued by D, and a jury sworn to try the issues as to them all, a verdict finding the issues against A and B only, and saying nothing as to C, should not be received; and a judgment rendered upon such a verdict will be reversed.

3. When the city of St. Louis and an individual are sued jointly for damages occasioned by the negligence of the latter, and the suit is dismissed as to the individual, the record not showing that he is dead, a judgment taken thereafter against the city will be reversed.

4. To render a city liable for an injury occasioned by the dangerous condition of a street or sidewalk, resulting from the negligence or malfeasance of private persons engaged in erecting or repairing buildings, such dangerous condition must be known to the city authorities, and they must have neglected to enforce the municipal regulations respecting persons so engaged.

5. In general, a city is liable for injuries resulting from the dangerous condition of a street or sidewalk only when that condition constitutes a nuisance.

6. There is a legal distinction between a hole or pit occasioned by the subsidence of the soil, or the decay of the materials of which a street or sidewalk is composed, and an excavation which is a necessary part of an improvement.

Appeal from St. Louis Circuit Court.
*Reversed and remanded.*

*James Taussig,* for appellants Brown and Schneider, cited : Rev. Ord., ch. 13, Art. 3, sec. 2.

*E. T. Farish,* for appellant the city of St. Louis, cited : Adams *v.* Carlisle, 21 Pick. 146 ; Holmon *v.* Townsend, 13 Metc. 297 ; Horton *v.* Ipswick, 12 Cush. 488 ; Tuttle *v.* Holyoke, 6 Gray, 447 ; Seads *v.* Dennis, 105 Mass. 310 ; James *v.* San Francisco, 6 Cal. 528 ; Barry *v.* City of St. Louis, 17 Mo. 121 ; Green *v.* Portland, 32 Me. 431 ; Murphy *v.* Chicago, 29 Ill. 279.

*Gottschalk,* for appellants Brown and Schnaider, cited : Barry *v.* City of St. Louis, 17 Mo. 121 ; Morgan *v.* Bowman, 22 Mo. 538 ; Darnstadter *v.* Moynehan, 27 Mich. 188 ; Barbour *v.* White, 37 Ill. 164 ; Wood *et al. v.* McGuire, 17 Geo. 361.

*H. N. Hart,* and *Jecko & Hospes,* for respondent, cited : Blake *v.* City of St. Louis, 40 Mo. 569 ; Basset *v.* City of St. Joseph, 53 Mo. 290 ; Winship *v.* Enfield, 42 N. H. 197 ; Market *v.* City of St. Louis, 56 Mo. 189.

GANTT, P. J., delivered the opinion of the court.

Schweickhardt brought an action, on January 20, 1872, against James Lynch, the city of St. Louis, B. Gratz Brown, Philip W. Schneider, John D. Stone, and Thomas Allen. The amended petition showed that on or about December 11, 1871, the defendants caused to be dug at the intersection of Fifth and Market streets, in the city of St. Louis, a deep and dangerous excavation, and placed in the public street at that point large rocks and other obstructions, rendering the street unsafe, and without signals in the night-time, and plaintiff, walking there, fell, was gravely injured, etc.

Lynch answered, denying that the streets were rendered dangerous by any digging ; denying the negligent leaving of the place without signals in the night-time ; denying also the injury of plaintiff.

Brown and Schneider denied their negligence ; denied that they dug a dangerous excavation; or left it unguarded,

and without signals; ignored the injury of the plaintiff, and averred that they, being partners, contracted with James Lynch that he should cut and dress the flagging required to make a sidewalk at corner of Fifth and Market, of red granite, to be delivered to him by Brown and Schneider near Lesperance street, in St. Louis; that they did so deliver such granite to Lynch near Lesperance street, and Lynch did lay the sidewalk at Fifth and Market; but Brown and Schneider had no possession of the street nor sidewalk, nor of the work, and are not responsible for anything done or omitted by Lynch or other persons there.

The city of St. Louis answered, denying that it caused to be dug any such excavation, etc., or placed rock or other obstructions in the streets, or carelessly left any dangerous place unguarded; ignoring the injuries of plaintiff, but denying that, if injured, it was by any fault of the city.

Thomas Allen answered, denying the digging of the excavation, the placing of the obstructions, or the neglect of the precautions stated in the petition, and ignoring the injuries of the plaintiff; alleging that he contracted with Stacey and Stone to build, complete, and deliver to him the building at Fifth and Market streets, and the sidewalks adjoining the same; and that, from the time of the contract until long after the occurrence of the injury complained of, he had no possession, control, or direction of the building, sidewalk, or street.

There was a reply denying the contract between Allen and Stacey and Stone; a reply denying the contract between Lynch and Brown and Schneider; a separate answer was filed by Stone, denying the making of a dangerous excavation, and negligence, and ignoring the injuries of plaintiff.

The cause was tried at the December term, 1874, and the suit was dismissed as to James Lynch. The jury found a verdict against the city of St. Louis, B. Gratz Brown, Thomas Allen, and Philip W. Schneider, in the sum of $3,500. Nothing was said in the verdict of Stone or Stacey. The

court thereupon gave judgment against the city, Allen, Brown, and Schneider for $3,500 and costs.

A motion for a new trial, and a motion in arrest of judgment, were overruled, and an appeal was taken to the general term, where the judgment was affirmed.

By the bill of exceptions it appeared that Schweickhardt fell and hurt himself, at the corner of Fifth and Market streets, on December 11, 1871, in the afternoon, after six o'clock. There was no guard and no light.

The plaintiff read section 2, of Article 3, of chapter 13, pages 427 and 428, directing all persons who dig an excavation in or near a highway in St. Louis to cause it to be fenced by a substantial fence, not less than three feet high, the boards of which shall not be more than one foot apart, and cause red lights to be hoisted conspicuously near such excavation, and kept burning through the night.

Sharpenberg testified, for plaintiff, that large granite blocks were lying in the street, near the corner of Fifth and Market. There was an excavation of two feet; some logs. Two of the broad flag-stones were laid before plaintiff was hurt. Sometimes lights were there, sometimes not. Witness, who was a policeman, notified Lynch, to whom Schneider gave the contract of laying the pavement, that no lights were there; notified him three times. Reported him once. Witness had seen Mr. Allen about the building; also saw Schneider looking at the work as it was going on, giving no direction; saw Stone there bossing the men who were putting up the building; saw city officials passing there; no fence to the excavation; no light the night of the accident.

There was evidence tending to show the injuries sustained by the plaintiff.

On the part of the defendants, Heffner, assistant city engineer, was examined to show the width of the streets and of the sidewalks at the corner of Fifth and Market streets. Fruin, who assisted plaintiff into Schneider's

saloon when he was hurt, testified to the width of the sidewalk along which plaintiff might have passed.   Durgan testified that, on the evening of the accident, about four o'clock, P. M., he lit the lamp and put up guards at the place ; witness and his father, whom he called James Lynch, and a man named Sweeney, were at work there.   Lynch was laying the flag-stones.   Lynch has died during the pendency of the suit, and, when the plaintiff's case was closed and part of defend-ants' case put in, the plaintiff dismissed as to him.   He seems to have had no administrator, and to have died wholly insolvent.

Defendants objected to the dismissal of the suit as to him, after the introduction of evidence which, it was alleged, but for his being a party, was inadmissible.   The court permitted it, however.

Stone testified that he and Stacey were the contractors for Mr. Allen's building ; that Stacey was dead before the injury complained of.   Stacey and Stone had the contract for the building, but nothing to do with the pavement of the sidewalk.   It was flagged with granite slabs.   Mr. Allen testified that he contracted with Brown and Schneider for the flagging of the pavement, and did not know that they made a sub-contract with James Lynch.   Witness paid Schneider for it.   Barrett, the architect and superin-tendent of the building, testified.   His testimony was not important.   Murphy testified that he supervised, under Barrett, the carpenters' work ; that Lynch did the flagging in fact, but how employed, witness did not know.   Schneider was occasionally there ;  he took charge after Lynch left ; Lynch worked about three weeks.

Evidence was given of the issue of a building permit to Thomas Allen, on the application of Stacey and Stone, con-tractors ;  and sections 1 and 2 of the city ordinances (pp. 350, 351, of Rev. Ord. 1871) were read by Mr. Allen's counsel.   Also the contract between James Lynch and Brown and Schneider was read, dated November 7, 1871,

for laying the flagging in front of Allen's building. Meah-cagan, on behalf of Brown and Schneider, testified that Schneider took charge of the work after the making of the contract, and finished it towards the middle of January, 1872. That prior to that time they furnished rock to Lynch by virtue of a contract with him, but had nothing to do with laying the rock. Brown and Schneider had a contract with Allen, and Lynch made a sub-contract with Brown and Schneider.

The court instructed the jury as follows :

" If you believe from the evidence that if it even appears that the plaintiff, at and just before the happening of the injury, knew of the dangerous condition of the street, this alone will not prevent his recovery in this action.

" If you believe from, etc., that the defendants carelessly or negligently placed obstructions, or caused obstructions to be so placed, in or across Fifth street, at or near the point mentioned in the petition, and that plaintiff, while carefully passing in or along said street, fell over said obstructions and was injured, then the jury will find for the plaintiff, and against such defendant or defendants who so placed said obstructions, or caused the same to be so placed.

" The plaintiff was bound to exercise only such care and prudence as is ordinarily done by persons of ordinary capacity and prudence under similar circumstances, and was not bound to use extraordinary care or prudence to avoid the accident.

" If you believe from, etc., that Fifth street, at or near the point mentioned in the petition, was in an unsafe and dangerous condition, and that the defendant the city of St. Louis, or its officers and agents, knew said fact, and that the plaintiff, while passing in and along said street, was, by reason of the unsafe and dangerous condition thereof, and without fault, etc., on his part, thrown down and injured, you will find against the city.

" If you find for plaintiff, you will assess damages at such

sum, not exceeding $25,000, as will be a fair and just compensation for the injury sustained by plaintiff, taking into consideration his position in life, the nature of his injuries, whether permanent or transient," etc.

At the instance of the city and Brown and Schneider, the court instructed the jury as follows:

"If you believe from, etc., that, on the night of the alleged accident, plaintiff passed among the obstructions and caused the injury by an act of negligence, in stepping on a round log, and that stepping on that log was a careless act, then you will find for defendant.

"If plaintiff was guilty of contributory negligence, the verdict must be for defendants.

"Only actual compensation is recoverable. False swearing discredits the witness who swears falsely.

"Hearsay is not evidence; so far as admitted. it is to be disregarded.

"The jury must find for Stone, unless plaintiff has shown that Stone undertook to lay the granite flagging and the illuminated tiles in front of Allen's building, at corner of Fifth and Market, or that Stone and Stacey, or Stone alone, directed and controlled the workmen in laying said flagging and illuminated tiles."

To the giving of these Mr. Allen excepted, and asked the following:

1. "You must find for defendant Allen."

2. "If the work was done by Brown and Schneider, or Lynch, by contract with Allen, did the work in question, Allen is not answerable."

There was a motion for a new trial, and a motion in arrest, which were overruled, and defendants appealed to this court, saving all exceptions. Several questions arise respecting the relations of the parties to each other.

1. Was Allen the principal of Brown and Schneider in putting down the granite flagging at the corner of Fifth and Market?

37

2. Was Lynch under the control of Brown and Schneider?
We look into the contract by which the engagement of Brown and Schneider was defined. Though the written memorandum of this contract was not signed by Brown and Schneider, it is sufficiently clear that its terms were conformable to that memorandum, and we are able practically to treat that paper as showing the stipulations of Brown and Schneider with Allen. They agreed, in October, 1871, to put down for him a granite pavement. After the making of this contract, Mr. Allen left the performance of it to Brown and Schneider alone. They seem to have underlet it to Lynch, but Allen had no power of interfering in the management of the job except that reversionary right which is necessarily reserved to every owner of land in such cases. He could not, without becoming a trespasser, have controlled the manner in which Brown and Schneider were completing the work, so long as they confined themselves to the performance of the contract; and it will hardly be contended that the law made him a superintendent of it, and that he was bound to intervene as soon as the first symptom of negligence appeared on their part. Brown and Schneider were contractors with, and not servants of, Allen; and, as was held by the Supreme Court of Missouri, in *Morgan* v. *Bowman*, 22 Mo. 538, Allen was not liable for any negligent performance by Brown and Schneider of the contract they had made. The maxim of *respondeat superior* does not apply to such a case, because the relation of master and servant did not exist. If Allen is liable in the present action, it must be for some negligence of his own—not for any committed by Brown and Schneider, considered as his agents.

2. As to the relations between Brown and Schneider and Lynch, they appear plainly enough. A contract in writing was made between them and him, on November 7, 1871, by which they divided with him the work they assumed to do for Allen. They agreed to furnish to Lynch, at the foot of Les-

perance street, the rough stone which, for a stipulated price, he was to cut, dress, haul, and set in the sidewalk. He was to do this part of the work for, and of course to receive his price from, Brown and Schneider. The contract was roughly drawn, but its meaning is plain enough. Lynch appears by this paper to have been the employee or servant of Brown and Schneider to do part of the work going to make up the whole contract they had made with Allen. The practical construction of Lynch's engagement by Brown and Schneider is in conformity with this view. At a date somewhat subsequent to the injury complained of, they removed him from the charge of the work at Allen's building, and took it in hand themselves.

3. A further inquiry of importance respects the relations of the city to the accident complained of.

It seems to be settled that, if the work had been city work, the contractor, and not the city, would have been alone liable for the resulting damage. *Barry* v. *City of St. Louis*, 17 Mo. 121. It is sought to render the city responsible here because of the matters testified to by W. Sharpenberg. He says that for a period of six weeks the street at that quarter was in a dangerous condition, and that various city officers passed by the spot and must have known of its state. If the street was in a dangerous condition, and that condition being known to the city authorities, no steps were taken to cure the danger, the city is liable for the resulting damages. *Blake* v. *City of St. Louis*, 45 Mo. 569; *Smith* v. *City of St. Joseph*, 45 Mo. 449. But the *gist* of such an action is the negligence of the municipality. The thoroughfare must be out of repair, the city must be aware of this, and must have neglected to put it in a safe condition, and the party injured must not have been grossly negligent.

By "dangerous condition" is meant, we think, something more than the accumulation of materials on the neigh-

borhood of a building undergoing erection or repair, or
that excavation, more or less deep, which is needed in order
to put down a sidewalk of stone slabs.   A temporary state
of disorder is absolutely inseparable from improvement of
certain kinds ; a street or sidewalk is rendered impassable,
or partially impassable, during the progress of the work ; it
is matter of familiar experience that a part of it is for the
time withdrawn from public use, in order to allow the doing
of the work needed for the embellishment or convenience
of the city ; and all that can reasonably be demanded of the
city, under such circumstances, is the taking of due care,
or the enforcement of the regulations made (if there be
such competent regulations), for securing passengers of
ordinary prudence from danger.   The ordinances of the
city require the erection of guards, and the putting up of
signals during the night, at such points.   They impose on
the parties doing the work the duty of doing this ; and all
that the city can be made liable for is the neglect to enforce
the performance of that duty.   The performance can only
be enforced—indeed, the term employed is not very accu-
rate—by exacting the penalties attendant on a violation of
the ordinances, if those ordinances be a reasonable provision
against the neglect of the duty.   A case of neglect must be
brought home to the knowledge of the city, and no steps
must have been taken to compel care.   It does not appear
that the excavation in this case was of a peculiarly dangerous
nature.   There was a temporary sidewalk of plank, on
which, if there had been light, any person of ordinary
prudence might have walked in safety.   The want of light,
and the want of guards, seem to have been the particulars
of the negligence of Lynch.   The evidence shows that this
light and these guards were sometimes present and some-
times absent, and it would appear that both were absent on
the evening of the accident.   But there is no evidence
whatever that the absence of either on that evening was

known to the city; and there is evidence that the police of the city had, on several occasions, caused Lynch to put up light and guards at the point of danger.

The latest decision of our Supreme Court on this subject *(Barrett* v. *City of St. Joseph,* 53 Mo. 290) declares that, to render the municipality liable, the dangerous state of the street or sidewalk must have been known to the authorities, and carelessly permitted to continue. There is an obvious distinction between a hole or excavation which is the result of subsidence of the soil, or decay of the material of which the street is composed, and a temporary excavation which is a necessary part of an important improvement. In respect of the last, in order to render the city liable, negligence different both in kind and degree from that disclosed by this record will be required. An excavation of the first description is nothing but a nuisance, if it be sufficient to obstruct travel or endanger travelers. One of the second description can with no propriety be so termed; and, without the toleration of obstructions of this nature, a house, or a street, or a sidewalk could neither be constructed nor repaired.

The counsel for the city dwells with earnestness on the dismissal of the suit against Lynch (who, if any one, was the party whose negligence caused the injury) and the taking of judgment against the city, contrary to the provisions of section 13, of Article 12, of the Charter of 1870, and Mr. Allen's counsel makes the same point. Each is entitled to make and press it. Clearly the plaintiff had no right to dismiss his suit against Lynch and continue his action against the city. This is plainly forbidden by the section of the charter above referred to, and the record proper certainly shows that this prohibition has been disregarded. But we are told that the evidence preserved in the bill of exceptions shows that Lynch died before the trial. His death, whenever it occurred, abated the action (sec. 30 of Art. 12, Gen. Stat.) unless the passage of the act incorporating

St. Louis, referred to, causes such an action as the present to survive against the executor or administrator of a tort-feasor. We do not think that this consequence can be claimed for that passage; and we are of opinion that the suit was at an end against Lynch if he were really dead before the trial. But there is no suggestion or allegation of his death in the pleadings, and, of course, no finding of the fact. On the contrary, the suit is dismissed as to him, after all the evidence had been put in, on the day when the judgment was taken against the city; and, however we may be convinced *aliunde* that he was dead, the record does not show it, but does show a condition of things for which no justification is offered, and which, without such justification, is forbidden by law. As the judgment must be reversed for other reasons, we need not dwell upon the negligence which permits the record to be silent respecting a matter which undoubtedly influenced materially the action of the Circuit Court.

5. It is further objected that there was a total failure on the part of the jury to find a verdict as to Stone; that they were sworn to try the issues joined between the plaintiff and all the defendants, of whom Stone was one; that they only performed part of this duty; that the court possessed no power to give any judgment as to Stone; that it nevertheless gave judgment in his favor; and that the judgment, being an entirety, and erroneous in this particular, must be set aside altogether.

The verdict and judgment are in the following words and figures:

" Henry Schweickhardt *v.* City of St. Louis, B. Gratz Brown, Philip W. Schneider, David D. Stone, Thos. Allen, and James Lynch. | Tuesday, December 15, 1874. Now at this day come the parties, by their respective attorneys, and also come the jurors impaneled and sworn herein, whereupon the plaintiff dismissed this suit as against the defendant James Lynch,

and the jurors aforesaid, having agreed upon their verdict, upon their oaths aforesaid say they find for the plaintiff, against 'the defendants the city of St. Louis, B. Gratz Brown, Philip W. Schneider, and Thomas Allen, and assess the damages at the sum of $3,500. It is therefore considered by the court that the plaintiff take nothing by his suit in this behalf against the defendants James Lynch and John D. Stone, but that the said defendants go hence without day, etc., and that the plaintiff recover of said defendants, the city of St. Louis," etc.

It appears by the record that the plaintiff filed an amended petition; that the city of St. Louis, Brown, Schneider, Stone, Lynch, and Allen filed each a separate answer; that replications were filed to the answers of the city, Brown, Schneider, and Allen, and that thereupon a jury was sworn and the cause tried, resulting as above stated.

We think that this judgment cannot stand upon this verdict. We are of opinion that the verdict was imperfect, and should not have been received; and that the judgment rendered by the court was inconsistent with, and unwarranted by, it.

" A verdict that finds part of the issue, and finding nothing for the residue, this is insufficient for the whole, because they have not tried the whole issue wherewith they are charged. As if an information of intrusion be brought against one for intruding into a messuage and 100 acres of land, upon the general issue the jury finds against the defendant for the land, but saith nothing for the house, this is insufficient for the whole, and so was it twice adjudged." Co. Lit. 227, *a.* To the same effect see *Hooper* v. *Shepherd*, 2 Strange, 1089; *Miller* v. *Trets*, 1 Ld. Raym. 324; *Patterson* v. *United States*, 2 Wheat. 221; *Holmes* v. *Wood*, 5 Mass. 1; *Kerr* v. *Hawthorne*, 4 Yeates, 293; *Davidson* v. *Bond*, 12 Ill. 84; *Barbour* v. *White*, 37 Ill. 164; *Wood* v. *Maguire's Children*, 17 Ga. 361.

This objection is by no means one of form only, nor one

of which the other defendants cannot take advantage. It is far from being immaterial whether, when several are sued as jointly liable for a tort, there is a verdict in favor of one or more, while as to the rest the verdict and judgment are for the plaintiff. Moreover, as the several defendants, if jointly liable, are subject to contribution, those against whom the verdict is given are interested in having as many assistants in bearing the burden as possible. The jury here left it undetermined whether Stone was liable to any share of this burden. The court thereupon undertook to declare that he was not liable; and, without pausing to inquire whether such a judgment, if not reversed, would be a bar to an action for contribution, the other defendants are plainly damnified by being subjected to an execution, in advance of any determination of their relations to Stone, as to the amount they are thus compelled to pay.

With the concurrence of all the judges, the judgment is reversed, and the cause remanded for a new trial.